Filed 7/28/26  Perez v. Cascade Drilling CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN PEREZ, | D086161 and D087024 |
| Plaintiff and Respondent, | (Super. Ct. Nos.:  CIVRS2401152 |
| v. | CIVRS2402543) |
| CASCADE DRILLING, L.P., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Bernardino County, Kory E. Mathewson and Tony Raphael, Judges.  Affirmed.

Koning Zollar, Blake Zollar, Shaun Paisley and Neal Gibeault for Defendant and Appellant.

Lavi & Ebrahimian, Joseph Lavi, Jordan D. Bello and Brett Szmanda for Plaintiff and Respondent.

Cascade Drilling, L.P. (Cascade) appeals from two orders denying its petitions to compel arbitration of two complaints filed by former employee, Christian Perez.  Cascade relied on the same written agreement to arbitrate (the Arbitration Agreement) in both petitions, and in each case, the trial courts found the agreement to be unconscionable and denied the petitions. Cascade asserts that the trial courts incorrectly interpreted a provision

delegating questions of arbitrability to the arbitrator; that the trial courts improperly construed various other provisions of the agreement to find them unconscionable; and that the trial courts abused their discretion by not severing the unconscionable provisions to allow for arbitration. We consolidated the cases on appeal and now affirm the orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cascade is headquartered in the state of Washington and provides environmental and infrastructure drilling services in multiple states, including California. Perez was an hourly non-exempt employee of Cascade in San Bernardino County for several months in 2024.

Perez filed two complaints against Cascade in October and November, 2024. The first was a class action complaint asserting eight causes of action for various Labor Code violations (the Class Action) and the second sought civil penalties pursuant to the Private Attorneys General Act of 2004 (PAGA, Labor Code § 2698 et seq.) (the PAGA Action). Cascade responded to each with a petition to compel arbitration, relying on the Arbitration Agreement, which Perez had signed as part of his onboarding process.

Cascade provided a declaration from its Chief People Officer, Ken Moses, in support of the petitions to compel arbitration. Moses explained that Perez received an employment offer letter in March 2024 that stated his employment was contingent on a "signed Arbitration Agreement between you and Cascade." Cascade included a copy of the agreement at the end of the letter, which was attached as an exhibit to the declaration. In addition, as part of his onboarding process, Perez was required to log into Cascade's human resource system and complete various tasks, including "Arbitration Agreement." When Perez clicked on the "Arbitration Agreement" task, the system opened a copy of the Arbitration Agreement. To complete the task,

2

Perez had to enter the date at the top of the agreement, scroll through the entire agreement, and then check a box stating, "I accept and acknowledge the company policy above." Perez completed this task on March 27, 2024.

The Arbitration Agreement contains 12 paragraphs and is just over two pages in length. The font is relatively small, but readable.[1] The Arbitration Agreement broadly "covers all past, current, and future grievances, disputes, claims, or causes of action that otherwise could be brought in a federal, state or local court or agency under applicable federal, state or local laws, arising out of or relating to [Perez's] employment with [Cascade]." It specifically covers "all claims under the California Labor Code, including, but not limited to, claims for overtime, unpaid wages, and claims involving meal and rest breaks."

The Arbitration Agreement contains a broad waiver of class action and representative action claims. The waiver excludes PAGA claims "to the extent such claims cannot be waived under non-preempted California law," but states that the employee must first arbitrate their individual claims, and that "the Parties agree to bifurcate and stay for the duration of the arbitration proceedings any such Excluded Claims."

The Arbitration Agreement allows employees to file "a charge or complaint with the federal Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, or an analogous state or local agency," but notes that "the parties waive their right to any remedy or relief as a result of such charges or complaints, to the extent that is permissible under applicable law."

---

[1] Perez's attorney submitted a declaration stating, "I determined the Agreement is written in 9 pt. font by copying text from the Agreement and past[ing] it into a Word document using the 'Keep source formatting' option."

3

The Arbitration Agreement states further, "Any claim subject to this agreement shall be arbitrated by one arbitrator in accordance with the Employment Arbitration Rules and Procedures of the Judicial Arbitration and Mediation Service ('JAMS')." It notes that the "JAMS Rules are available for review on JAMS's website" and provides a hyperlink.[2] It also contains additional provisions regarding the way in which arbitration is to be conducted, which we discuss in more detail *post*.

Perez does not dispute that he signed the Arbitration Agreement. However, Perez opposed Cascade's petition to compel arbitration and argued that the Arbitration Agreement was both procedurally and substantively unconscionable. In a declaration in support of his opposition, Perez asserted that Cascade made him sign the e-document on a computer in a manager's office, that he was not given a paper copy despite asking for one, and that the process took less than five minutes. Perez said that he understood that he was required to sign the document as a condition of his employment, and that he was not provided any opportunity to negotiate the terms.

The manager submitted a declaration in response disputing Perez's characterization of the signing. She said that Perez did not sign the document in her office, and explained that he must have completed the document on a device at Cascade's facility.

_____

[2] On the record before us, we are unable to determine which version of the JAMS Rules Perez may have accessed when he executed the Arbitration Agreement, or whether those rules have changed since. Cascade provided a copy of the JAMS Rules and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness (JAMS Minimum Standards) to the trial court in the PAGA action. It is not apparent whether Cascade provided similar copies to the trial court in the Class Action. Regardless, we grant Cascade's unopposed request to take judicial notice of those same documents. (See Evid. Code §§ 452, subd. (h), 459.)

4

In a written ruling dated January 31, 2025, the trial court denied Cascade's petition to compel arbitration of the Class Action Complaint. The court began by analyzing whether it could determine the enforceability of the Arbitration Agreement, or whether the "Questions of arbitrability" provisions reserved such analysis for the arbitrator. The court concluded that the delegation clause was ambiguous and "therefore fails to meet the relatively high bar of clearly and unmistakably showing the agreement delegates enforceability to the arbitrator."

The trial court went on to consider unconscionability. After construing and analyzing numerous individual provisions, it determined that the Arbitration Agreement had a high level of substantive unconscionability and "too many substantively unconscionable provisions to overlook." Accordingly, the court determined that the substantively unconscionable portions could not be severed and found the Arbitration Agreement unenforceable. Cascade filed a timely notice of appeal from that ruling on February 10, 2025.

Perez then filed a notice of related case in the PAGA Action and asked the court there to take judicial notice of the ruling denying Cascade's petition to compel arbitration in the Class Action. By written order filed on May 29, 2025, the court in the PAGA Action likewise denied Cascade's petition to compel arbitration. Therein, the court granted Perez's request to take judicial notice of the January 31, 2025 ruling in the Class Action, and made several similar findings regarding the construction of various provisions. Cascade filed a timely notice of appeal from the May 29, 2025 ruling and this court consolidated the two appeals.

## II.   DISCUSSION

Cascade asserts that the trial courts in each case erred by determining the Arbitration Agreement did not clearly and unmistakably leave the

5

question of arbitrability to the arbitrator; by incorrectly construing several provisions in the Arbitration Agreement to determine that they were substantively unconscionable; and by failing to sever any unconscionable provisions to allow for enforcement of the remainder of the Arbitration Agreement. We address each argument in turn and conclude that the trial courts did not err in denying the petitions for arbitration.

## A. Standard of Review

Where, as here, the parties do not present any extrinsic evidence and the facts are undisputed, " 'we review the denial of a motion to compel arbitration de novo. [Citations.] Likewise, we independently review the order if the trial court's denial [of a petition to compel arbitration] rests solely on a question of law.' " (*Arzate v. ACE American Ins. Co.* (2025) 108 Cal.App.5th 1191, 1199.) The ordinary rules of contract interpretation apply, and we construe the Arbitrating Agreement like any other contract "to give effect to the intention of the parties.' " (*Ibid.*)

"Our objective in construction of the language used in the contract is to determine and to effectuate the intention of the parties. [Citation.] It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce." (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.) We are cognizant that under both California and federal law there is a "strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes." (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843; see also *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez I*) ["Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement"]; St. *Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 [recognizing federal and state public policies in favor of arbitration].) At the same time, it is essential

6

to the proper operation of that policy that " '[t]he scope of arbitration is . . . a matter of agreement between the parties.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 8.)

## B.    Governing Law

Before turning to the specific arguments raised on appeal, we note that the Arbitration Agreement states:

> "**8. Governing Law; Substantive Law.**  This Agreement and any arbitration shall be governed by the Federal Arbitration Act (9 U.S.C., Sections 1-14) ('FAA'), and will be construed accordingly, to the exclusion of any state law inconsistent with the FAA.  It is the parties' intention that both the procedural and substantive provisions of the FAA shall apply. If it is determined by a court that the FAA does not apply to the Parties' dispute, then the law of the state where Employee last worked for Employer will govern the arbitration, unless prohibited by law.  With respect to the claim(s) asserted in arbitration, the arbitrator shall apply the substantive state law of the jurisdiction in which Employee resided while employed by the Company or federal law, as applicable."

The procedural rules of the California Arbitration Act (CAA, Code of Civ. Proc., § 1280 et seq.) "apply by default to cases brought in California courts." (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 582.)  However, parties may "expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions" instead.  (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394, italics omitted.)

Here, the plain language of the Arbitration Agreement expresses the parties' intent to apply both the substantive and procedural provisions of the FAA.  As stated therein, the Arbitration Agreement shall be governed by and construed under the FAA.  (See *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1116, 1122 (*Rodriguez*) [governing law

7

provision in written arbitration agreement was so "broad and unconditional" that it expressly adopted both the substantive and procedural provisions of the FAA].)  Where the FAA is silent and not in conflict, California state law applies.

## C.    Court's Authority to Determine Arbitrability

Turning to the merits, Cascade first asserts that the trial court should not have determined whether the Arbitration Agreement was unconscionable or enforceable because it contained the following clause under paragraph 7, "Arbitration Rules and Procedures":

> "**Questions of arbitrability (that is whether an issue is subject to arbitration under this agreement) shall be decided by the arbitrator.**  Likewise, procedural questions that grow out of the dispute and bear on the final disposition are also matters for the arbitrator.  Nothing in this Agreement shall preclude the Parties from seeking provisional remedies, such as an injunction or temporary restraining order, in aid of arbitration or to prevent irreparable harm pending the conclusion of arbitration from a court of competent jurisdiction or from the arbitrator."

Cascade argues further that the same paragraph of the Arbitration Agreement also incorporates the JAMS Rules, and that those rules "provide that 'arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.'  (JAMS Rules at 7, Rule 11(b).)"

Under federal and state law, " 'courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about "arbitrability," ' including ' "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." ' " (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 603; *Lamps Plus, Inc. v. Varela* (2019) 587 U.S. 176,

185 [recognizing presumption].) Despite this presumption, parties can agree to delegate questions regarding enforceability of the agreement and whether the underlying dispute is subject to arbitration to an arbitrator instead of the court, so long as the delegation is "clear and unmistakable." (*Consumer Advocacy Group, Inc. v. Walmart, Inc.* (2025) 112 Cal.App.5th 679, 690; see also *Mondragon*, at p. 601; *Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, 302 (*Beco*); *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 586 U.S. 63, 65 ["When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."].) " ' "The 'clear and unmistakable' test reflects a '*heightened* standard of proof' that reverses the typical presumption in favor of the arbitration of disputes." ' " (*Mondragon*, at p. 603.)

In *Beco,* the agreement at issue stated that the parties agreed to submit " 'any controversy or claim arising out of or relating to [the] employment relationship' " to either mediation or arbitration, and went on to state that the " 'agreement to submit to mediation and (if necessary) arbitration: [¶] . . . Covers any dispute concerning the arbitrability of any such controversy or claim." (*Beco, supra,* 86 Cal.App.5th at p. 299.) The court determined, "[t]he language of this provision is, at best, ambiguous— 'any dispute concerning the arbitrability of any such controversy or claim' could very easily be read to mean a specific *substantive* dispute or claim, not the issue of who decides whether the entire agreement is enforceable or unconscionable." (*Id.* at p. 303.)

Here, as noted, the Arbitration Agreement states that "questions of arbitrability" shall be decided by the arbitrator. It then goes on to define the phrase "questions of arbitration" to mean "whether an issue is subject to arbitration under this agreement." While this clause does appear to delegate

9

questions regarding the scope of the arbitration to the arbitrator (i.e., whether a given issue or claim is subject to arbitration under the agreement), it is not a clear and unmistakable delegation of questions concerning the gateway issue of *enforceability* of the Arbitration Agreement. Rather, like the language at issue in *Beco*, the language at issue here could easily be read to mean a specific substantive issue or claim.

Cascade argues that "whether an issue is subject to arbitration under this provision" is broader than which claims fall under the agreement, and should instead be interpreted as consistent with the United States Supreme Court's definition of arbitrability, or " 'whether the parties' dispute is subject to arbitration.' " (*New Prime Inc. v. Oliveira* (2019) 586 U.S. 105, 111–112.) If Cascade had wished to use that language, or other language specifically referring to enforceability, it certainly could have; but it did not. (See *Beco*, *supra,* 86 Cal.App.5th at pp. 303–304 [Enforceability "is a distinct issue that could and would be easily addressed—if the parties actually contemplated it at the time of contracting—by stating expressly that the arbitrator shall decide questions of the enforceability of the arbitration provision."].)

Courts have consistently held that issues such as formation are traditionally reserved for the courts to decide. Stating that an arbitrator should decide whether a given "issue" is subject to arbitration—particularly where certain types of claims are excluded—does not clearly and unmistakably indicate that the parties intended to include gateway issues like traditional contract formation or enforceability. (See *Caremark, LLC v. Chickasaw Nation* (9th Cir. 2022) 43 F.4th 1021, 1030 ["a court 'should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid

10

provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.' "].)

Moreover, the "Governing Law; Substantive Law" provisions contemplate that a court, as opposed to an arbitrator, may decide some questions. It states, "[i]f it is *determined by a court* that the FAA does not apply to the Parties' dispute, then the law of the state where Employee last worked for Employer will govern the arbitration, unless prohibited by law." (Italics added.) In *Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, the court determined that a delegation clause did not clearly and unmistakably delegate issues of enforceability because it similarly contemplated "*a court* find[ing] . . . any provision of this Agreement . . . invalid or unenforceable." (*Id.* at p. 656.) Cascade asserts this choice of law provision does not mention enforceability, and that it could instead be referring to questions of contract formation, subpoena issuance during an arbitration, and the court's role in confirming, modifying, or vacating awards following arbitration, but of course there is no language limiting the provision in that manner. At a minimum, the provision contemplates a trial court's involvement in an unspecified manner.

We acknowledge that the provision of the JAMS rules is broader than that in the Arbitration Agreement and does reference "disputes over the formation, existence, [and] validity" of the Arbitration Agreement. However, the JAMS Rules are not controlling on this point. The Arbitration Agreement itself specifies, "To the extent the JAMS Rules conflict with any provision or aspect of this Agreement, this Agreement shall control." Accordingly, the specific provisions of the Arbitration Agreement that follow, including the one addressing and defining "Questions of Arbitrability" controls. (Cf. *B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 957–958 [concluding

11

arbitration agreement's reference to JAMS rules was evidence the parties clearly and unmistakably intended to submit issues of arbitrability to the arbitrator]; see also *Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1197 ["Even broad arbitration clauses that expressly delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard."].) Moreover, as noted, there is no indication the link provided in the Arbitration Agreement is static; rather, the JAMS Rules are subject to change at any time.

For these reasons, we conclude that the trial court did not err in declining to defer the question of enforceability to the arbitrator.

## D. Unconscionability

We turn next to the issue of unconscionability.

### 1. Applicable Legal Principles

"A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, 'save upon such grounds as exist for the revocation of any contract.' (Code Civ. Proc., § 1281.) Unconscionability provides such grounds." (*Ramirez I, supra,* 16 Cal.5th at p. 492.)

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." (*AT&T Mobility v. Concepcion* (2011) 563 U.S. 333, 339 (*Concepcion*).) It requires courts to "place arbitration agreements on an equal footing with other contracts." (*Ibid.*) However, it "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (*Ibid.*)

"In determining the rights of parties to enforce an arbitration agreement within the FAA's scope, courts apply state contract law while

12

giving due regard to the federal policy favoring arbitration." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; accord, *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 138 [applying California state law and concluding "[t]he FAA thus contemplates that unconscionability claims, like other state law contract defenses, will be resolved before arbitration is enforced"].) "Under California law, courts may refuse to enforce any contract found 'to have been unconscionable at the time it was made,' or may 'limit the application of any unconscionable clause.' " (*Concepcion*, *supra,* 563 U.S. at p. 340.)

"[T]he core concern of the unconscionability doctrine is the ' " 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " ' " (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145 (*Sonic*).) "[T]he unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party' [citation]. These include 'terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.' " (*Ibid*.)

" 'One common formulation of unconscionability is that it refers to " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " [Citation.] As that formulation implicitly recognizes, the doctrine of

unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, ' "which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " ' " (*Sonic,* 57 Cal.4th at p. 1133.) " ' "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." ' " (*Ibid.*)

" ' "[T]he paramount consideration in assessing [substantive] unconscionability is mutuality." ' [Citation] An arbitration agreement requires a ' "modicum of bilaterality," ' meaning the drafter cannot require another to submit to arbitration to pursue a claim but not accept the same limitation when it would act as the plaintiff, 'without at least some reasonable justification for such one-sidedness based on "business realities." ' (*Armendariz v. Foundation Health Psychcare Services, Inc.,* [(2000) 24 Cal.4th 83, 117.]) 'When only the weaker party's claims are subject to arbitration, and there is no reasonable justification for that lack of symmetry, the agreement lacks the requisite degree of mutuality. [Citations.] As our [Supreme Court] recognized in *Armendariz*, "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." [Citation.] As the court also recognized, "lack of mutuality can be manifested as much by what the agreement does not provide as by what it does." ' " (*Hasty v. American Automobile Assn.* (2023) 98 Cal.App.5th 1041, 1059 (*Hasty*).)

14

## 2. Application to the Provisions of the Arbitration Agreement

In their briefing on appeal, the parties agree that there is at least some level of procedural unconscionability (i.e., the Arbitration Agreement is an adhesion contract entered into as a requirement of employment) and focus on four separate provisions in the Arbitration Agreement that the trial court found to be substantively unconscionable. We address each in turn, and, as noted, apply the ordinary rules of contract interpretation.

### a. Public Injunctive Relief

Perez first asserts that the trial court correctly determined that the combination of the broad scope of the arbitration provision and the waiver of class action and class representative action claims precluded public injunctive relief. The relevant provisions state:

> **"2. Covered Claims.** This Agreement to arbitrate covers all past, current, and future grievances, disputes, claims, or causes of action that otherwise could be brought in a federal, state or local court or agency under applicable federal, state or local laws, arising out of or relating to Employee's employment with Employer, including claims arising out of or relating to Employee's hiring, recruitment, conditions of employment, and termination of employment. . . . The claims covered by this Agreement include, but are not limited to, claims for breach of any contract or covenant (express or implied), tort claims, claims for wrongful termination . . . in violation of public policy, claims for discrimination or harassment, claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, including, but not limited to, all claims arising under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Fair Labor Standards Act, the Family and Medical Leave Act, the California Fair Employment and Housing Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Employee Retirement Income Security Act, all as amended, and any other federal, state, local, or foreign law that governs the

15

Parties' employment relationship or termination thereof that can be arbitrated under applicable law.  The parties to this Agreement specifically agree that all claims under the California Labor Code, including, but not limited to, claims for overtime, unpaid wages, and claims involving meal and rest breaks shall be subject to this Arbitration Agreement."

**"4. Waiver of Class Action and Representative Action Claims.**  Except for [PAGA] ('Excluded Claims'), Employee and Employer expressly intend and agree that, to the fullest extent permitted by law: (a) class action and representative action procedures are hereby waived and shall not be asserted, nor will they apply, in any arbitration pursuant to this Agreement; (b) each will not assert class action or representative action claims against the other in arbitration, court, or any other forum . . . , (c) each shall only submit their own, individual claims in arbitration *and will not seek to represent the interests of any other person*, and (d) any claims by Employee will not be joined, consolidated, or heard together with claims of any other current or former employee of Employer.  To the extent that the Parties' dispute involves both timely filed Excluded Claims and claims subject to this Agreement, the Parties agree to bifurcate and stay for the duration of the arbitration proceedings any such Excluded Claims.  If the class and representative action waiver in this Section is held to be illegal or unenforceable and cannot be modified to be enforceable, then any claim(s) alleged or brought on behalf of a class or on a representative basis shall proceed in a court of law rather than by arbitration."  (Italics added.)

" '[P]ublic injunctive relief under the UCL [Unfair Competition Law; Bus. & Prof. Code §§ 17200 et seq.], the CLRA [California Consumers Legal Remedies Act; Civil Code §§ 1750 et seq.], and the false advertising law is relief that has "the primary purpose and effect of" prohibiting unlawful acts that threaten future injury to the general public.  [Citation.]  Relief that has the primary purpose or effect of redressing or preventing injury to an

16

individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief.' " (*Clifford v. Quest Software, Inc.* (2019) 38 Cal.App.5th 745, 751.) "[T]he *Broughton-Cruz* rule distinguishes between public injunctive relief and private injunctive relief, and . . . bars arbitration of claims for public injunctive relief." (*Ibid.*; see also, *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1080, fn. 5; *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315 (*Cruz*).)

In *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*), the California Supreme Court considered "whether the arbitration provision is valid and enforceable insofar as it purports to waive [a credit card holder's] right to seek public injunctive relief *in any forum*." (*Id.* at p. 956.) The relevant provisions of the agreement at issue there were as follows: "(1) '[a]n award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute'; (2) '[t]he arbitrator will not award relief for or against anyone who is not a party'; (3) 'the arbitrator may award relief only on an individual (non-class, nonrepresentative) basis'; and (4) 'neither you, we, nor any other person may pursue the Claims in arbitration as a class action, private attorney general action or other representative action.' " (*Ibid.*) After discussing the impact of changes to the UCL, the court held, "the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve. Thus, insofar as the arbitration provision here purports to waive [the credit card holder's] right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law." (*Id.* at p. 961.)

17

Perez asserts that by barring him from representing the interests of others, the Arbitration Agreement effectively bars him from seeking any form of public injunctive relief. Cascade asserts that the Arbitration Agreement only bars class or representative *claims*, and that the court in *McGill* clarified that an individual that met the standing requirements of the UCL following the passage of Proposition 64 was necessarily filing a claim "on his or her own behalf, not 'on behalf of the general public.' " (*McGill, supra,* 2 Cal.5th at p. 959.) However, the court in *McGill* went on to explain, "This remains true even if the person seeks, as one of the requested remedies, injunctive relief 'the primary purpose and effect of' which is 'to prohibit and enjoin conduct that is injurious to the general public.' " (*Ibid*.) Thus, the court clarified that individuals who meet the standing requirements for bringing a private action under the UCL can seek public injunctive relief, and that doing so does "not constitute the 'pursu[it]' of 'representative claims or relief on behalf of others' within the meaning of Business and Professions Code sections 17203 or 17535, such that 'compli[ance] with Section 382 of the Code of Civil Procedure' is required." (*Id.* at pp. 959–960; see also *Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 228 (*Vaughn*) [provision barring representative relief or "relief to a group or class of employees in one arbitration proceeding" precluded public injunctive relief].) The court *next* concluded "that the arbitration provision here at issue is invalid and unenforceable under state law insofar as it purports to waive McGill's statutory right to seek such relief." (*McGill,* at p. 961.)

Here, although the trial court focused on the provision of the class and representative claims waiver that stated Perez's claims in arbitration "will not be joined, consolidated, or heard together with claims of any other current or former employee," the same section also states that Perez "will not seek to

represent *the interests* of any other person." (Italics added.) Regardless of whether other employees' claims are joined or heard together, by refusing to allow Perez to "represent *the interests* of any other person," we agree that the provision appears to preclude him from seeking public injunctive relief and is substantively unconscionable. (*McGill, supra,* 2 Cal.5th at p. 959.)

To the extent Cascade asserts that the provision is irrelevant because Perez did not seek public injunctive relief in the two complaints at issue, that is beside the point. Unconscionability is evaluated at the time the contract is made, and not in the context of a particular claim or complaint. (Civil Code § 1670.5, subd. (a); *Armendariz v. Foundation Health Psychcare Services, Inc.*, (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

### b. Waiver of Administrative Relief

Perez next asserts that the Arbitration Agreement unconscionably waives his right to administrative relief.

The following provision appears in the Arbitration Agreement between the covered claims and class and representative action waiver clauses:

> **"3. Claims Not Covered.** Claims not covered by this Agreement are claims for workers' compensation, unemployment compensation benefits, administrative charges for unfair labor practices brought before the National Labor Relations Board, Excluded Claims (defined in Paragraph 4 below), or any other claim that, as a matter of law, the Parties cannot agree to arbitrate. Nothing in this Agreement shall be interpreted to mean that employees are precluded from filing a charge or complaint with the federal Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, or an analogous state or local agency. However, the parties waive their right to any remedy or relief as a result of such charges or complaints, to the extent that is permissible under applicable law."

19

Perez relies on *Hasty, supra,* 98 Cal.App.5th 1041 to assert that this provision is substantively unconscionable. The agreement at issue there had a clause, like the Arbitration Agreement here, stating "that either party may file a charge or complaint with an appropriate governmental administrative agency, however, 'the parties waive their right to any remedy or relief as a result of such charges or complaints brought by such governmental administrative agencies.' " (*Id.,* at p. 1060.) The *Hasty* court explained, "[t]hat provision has nothing to do with *arbitration.* Rather, it is simply a waiver of the right to compensation or relief in the administrative context, which certainly seems one-sided. Government administrative agencies after all generally oversee and enforce statutes and regulations against *employers* to protect employees." (*Ibid.*) The court noted that the provision was also confusing as it purports to allow administrative claims but then eliminates the right to any remedy or relief from any such proceeding and concluded, "[a] waiver of administrative remedies and relief, hidden in an arbitration agreement, is overly harsh and shocks the conscience." (*Ibid.*)

Cascade relies on *Sonic* to argue that a waiver of the right to any remedy or relief from any administrative proceeding does not, on its own, render a given arbitration agreement unconscionable. In *Sonic,* the California Supreme Court explained that it had previously "held as a categorical rule that it is contrary to public policy and unconscionable for an employer to require an employee, as a condition of employment, to waive the right to a Berman hearing, a dispute resolution forum established by the Legislature to assist employees in recovering wages owed," but that the United States Supreme Court had granted certiorari, vacated the judgment, and remanded for further consideration in light of *Concepcion.* (*Sonic, supra,* 57 Cal.4th at p. 1124.)

20

On remand, the court held that "the FAA preempts our state-law rule categorically prohibiting waiver of a Berman hearing in a predispute arbitration agreement imposed on an employee as a condition of employment," but that "such an agreement may be unconscionable if it is otherwise unreasonably one-sided in favor of the employer." (*Sonic, supra,* 57 Cal.4th at p. 1125.) It explained further, "There is no reason why an arbitral forum cannot provide these benefits, and an employee's surrender of such benefits does not necessarily make the agreement unconscionable. The fundamental fairness of the bargain, as with all contracts, will depend on what benefits the employee received under the agreement's substantive terms and the totality of circumstances surrounding the formation of the agreement." (*Ibid.*)

Here, the issue is not that the Arbitration Agreement prohibits any specific type of administrative hearing in favor of arbitration; the issue is that the Arbitration Agreement expressly permits such administrative hearings, thereby suggesting that claims brought in those venues are *not* subject to arbitration, but then prohibits the employee from receiving any relief or remedy as a result. Continuing to rely on *Sonic*, Cascade asserts that there is an accessible arbitral forum to resolve the same disputes. While an employee may bring a *similar* claim in front of the arbitrator, under the plain terms of the Arbitration Agreement, claims that would specifically be brought by "filing a charge or complaint with the federal Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, or an analogous state or local agency" are not covered (i.e., not subject to arbitration), *and* the employee waives their right to any relief or remedy as a result of such charges or complaints.

As the trial courts recognized, while this factor *alone* does not necessarily render the Arbitration Agreement unconscionable, it is one factor that courts may consider in determining whether or not the agreement as a whole is unconscionable.  (See *Sonic, supra,* 57 Cal.4th at p. 1142.)

### c.  Attorney Fees and Costs

Next, Perez asserts the following provision unfairly alters his potential entitlement to attorney fees and costs:

> **"6. Arbitration Fees and Costs.**  To file a claim, Employee will only be required to pay the equivalent of the fee to file a complaint in a court of local jurisdiction. Employer will pay any remaining fees that are specific to arbitration, including the arbitrator's fees and costs.  Each Party shall pay its own deposition, witness, expert, and attorneys' fees and other expenses to the same extent as if the matter were being heard in court.  However, if any Party prevails on a statutory claim that affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs to be awarded to the prevailing party, the arbitrator *may* award reasonable attorneys' fees in accordance with the applicable statute or written agreement.  The arbitrator shall resolve any dispute as to the reasonableness of any fees or costs awarded under this paragraph."  (Italics added.)

As an initial matter, we note that the term "prevailing party" may have a different meaning in different contexts.  Code of Civil Procedure section 1032 defines a prevailing party as "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant."  (*Id*., subd. (a)(4).)  Unless otherwise provided by statute, prevailing parties are entitled to recover costs as a matter of right.  (*Id*., subd. (b).)  In other words, so long as the plaintiff recovers some award, they are entitled to fees.  But Code of

22

Civil Procedure section 1032 does not apply in every case. (See, e.g., *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [explaining that Civil Code section 1717, which addresses actions on a contract, requires a more holistic approach and allows for a determination that there is no prevailing party where, for example, a plaintiff receives significantly less than the amount they initially sought].) In addition, as Perez points out, certain provisions of the Labor Code provide that employees that prevail on certain claims are entitled to attorney fees as a matter of right. (See, e.g., Lab. Code § 226, subd. (e)(1) [awarding attorney fees for intentional noncompliance with the Labor Code]; Lab. Code § 1194, subd. (a) ["any employee receiving less than the legal minimum wage or the legal overtime compensation . . . is entitled to recover . . . reasonable attorney's fees"].)

As the court in *Beco* explained, "Under *Armendariz*, [*supra,* 24 Cal. 4th at p. 102,] compulsory arbitration of FEHA [or other public] claims is not per se unconscionable so long as the arbitration agreement: ' " '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or *any* arbitrators' fees or expenses as a condition of access to the arbitration forum.' " ' " (*Beco, supra,* 86 Cal.App.5th at p. 309.) As here, the provision at issue in *Beco* required the plaintiff "to bear his own ' "attorney, expert and witness fees and expenses." ' " (*Ibid*.) The court found that provision violated *Armendariz*. (*Id.* at p. 310.)

The defendant in *Beco* argued that the provision was essentially negated by a more general provision allowing the arbitrator " ' "to award all types of relief that would otherwise be available to the parties in a court proceeding under State or Federal law." ' " (*Beco,* at p. 310.) The *Beco* court

23

rejected that argument, noting that it was "of course, backwards. The provision regarding the arbitrator's powers is the general provision, and the provisions limiting specific types of recovery and the limitations period are the specific ones." (*Ibid*.) Likewise, here, Cascade asserts the arbitrator was, at a minimum, permitted to "award reasonable attorneys' fees in accordance with the applicable statute or written agreement," and that paragraph 7 further states that "[t]he arbitrator shall: (a) have the power to award any types of legal or equitable relief that would be available under applicable law." The provision in paragraph 7 is a general provision, limited by the more specific fees and costs provision, and, as Perez asserts, the clause in paragraph 6 states only that "the arbitrator *may* award," not that arbitrator must or shall reward such fees or costs.

Cascade asserts that we should read this "may" as a "must" to construe the agreement in a manner that renders it enforceable. (See *Ramirez I, supra,* 16 Cal.5th at p. 507 ["Where a contract is susceptible to two interpretations, one which renders it valid and the other which renders it void, a court should select the interpretation that makes the contract valid."].) But here, the word "may" is not susceptible to two different interpretations. It is plainly permissive, and not mandatory. (See, e.g., *Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 802 ["The normal rule of statutory construction is that when the Legislature provides that a court or other decisionmaking body 'may' do an act, the statute is permissive, and grants discretion to the decision maker."]; *Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 433 ["Ordinarily, the word 'may' connotes a discretionary or permissive act; the word 'shall' connotes a mandatory or directory duty."]; *Gipson v. Davis Realty Co.* (1963) 215 Cal.App.2d 190, 202 ["the word ['may'] is primarily and ordinarily a permissive term and is so understood by

24

laymen"]; see also *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 252 (*Carbajal)* [Defendant "may not avoid the consequences of its deliberate choice to limit its employees' statutory right to attorney fees by advancing an interpretation contrary to the plain language of the arbitration agreement it drafted."].)

Cascade asserts that, at a minimum, the provision gives the arbitrator discretion to award fees in accordance with the law, and that the courts should not assume the worst of the arbitrator. But pointing out that the arbitrator has the discretion to deny fees that would otherwise be statutorily mandated does not require any assumption. Where statutory law *mandates* an award of attorney fees, it generally does so based on public policy reasons, and often in favor of employees. Removing those mandated provisions constitutes a one-sided agreement in favor of the employer, regardless of how the arbitrator exercises their discretion in any given case. (See, e.g., *Armendariz, supra,* 24 Cal.4th at p. 110 [explaining that permissive fee recovery provisions violate public policy because, for example, it "poses a significant risk that employees will have to bear large costs to vindicate their statutory right against workplace discrimination and therefore chills the exercise of that right."]; *Carbajal, supra,* 245 Cal.App.4th at p. 251 ["Several courts have held an arbitration provision is substantively unconscionable when it purports to deprive an employee of his or her statutory right to recover attorney fees if the employee prevails on a Labor Code claim for unpaid wages and other benefits, or on a discrimination claim under [FEHA]."].)

Turning to the issue of costs, we note, as the trial court did, that even this permissive provision addresses only attorney fees, and not costs. Cascade points out that the provision goes on to state, "The arbitrator shall

25

resolve any dispute as to the reasonableness of any fees or costs awarded." While this single conclusory statement does suggest some ability for the arbitrator to award costs, it remains that the sentence before states only that the arbitrator *may* award *fees* in accordance with the applicable statute or written agreement, and neglects to address costs. Thus, it is not apparent what disputes related to *costs* the arbitrator would be deciding.

Again, Cascade attempts to rely on the JAMS rules that were incorporated by reference into the Arbitration Agreement, with respect to the provisions regarding awards for both fees and costs, but that argument fails for the reasons already explained *ante* with respect to the arbitrability clause.

In sum, "[b]ecause these provisions attempt, in an entirely one-sided manner, to limit [Perez's] remedies and to shift the cost of arbitration, the trial court correctly decided these provisions are substantively unconscionable." (*Beco, supra,* 86 Cal.App.5th 311.)

### d. Discovery

Finally, Perez asserts that the Arbitration Agreement unfairly limits his ability to obtain discovery necessary to pursue his claims.

Paragraph 7 of the Arbitration Agreement states that "The arbitrator shall: . . . (c) have the authority to compel adequate discovery for the resolution of the dispute."

Perez relies on *Beco.* The agreement at issue there stated, " 'The arbitrator *shall have the authority* to allow for appropriate discovery and exchange of information before a hearing, including but not limited to production of documents, information requests, depositions, and subpoenas.' (Italics added.)" (*Beco, supra,* 86 Cal.App.5th at p. 312.) The court held that, "by its plain language, the subparagraph puts the issue of whether to allow discovery or not entirely in the arbitrator's hands" and that "[g]iving the arbitrator unfettered discretion over how much discovery does or does not

26

take place is inconsistent with allowing more than minimal discovery, which is required for FEHA claims." (*Ibid.*)

Cascade once again relies on the JAMS Rules, which, in this instance, are referenced in the same paragraph.  The JAMS Rules (at least the version provided to the trial court) require the parties to exchange "all non-privileged documents and other information (including electronically stored information . . . relevant to the dispute or claim immediately after commencement of the Arbitration."  They also state that each party may take at least one deposition, that the arbitrator shall decide whether to grant additional depositions, and that each party has an ongoing obligation to provide relevant, non-privileged documents."  Thus, it is reasonable to interpret the entirety of paragraph 7 of the Arbitration Agreement to incorporate these minimums (with the caveat that the JAMS Rules, and thus the minimums, could change at any time), and to *also* allow the arbitrator to compel adequate discovery for the resolution of the dispute, including those minimums and any additional necessary discovery.

The trial courts each found that *Beco* was instructive and rejected Cascade's reliance on the JAMS Rules based on the provision that states, " 'To the extent the JAMS Rules conflict with any provision or aspect of this Agreement, this Agreement shall control.' "  While we agree with the courts that the specific provisions of the Arbitration Agreement control over the JAMS Rules in most instances, in our view, there is no apparent conflict on this particular issue.  The JAMS Rules provide some basic provisions for the exchange of relevant information, *and* the Arbitration Agreement grants the arbitrator authority to compel adequate discovery for the resolution of the dispute.

27

Further, we note that, unlike the fees and costs provision, this provision does not say the arbitrator *may* order discovery, it grants the arbitrator authority to *compel* adequate discovery for the resolution of the dispute. While this does ultimately leave the scope of discovery in the arbitrator's hands, as Perez contends, it also indicates that the parties will be entitled to adequate discovery.

In *Ramirez I*, our high court explained, "The assessment of whether a discovery clause is unconscionable should focus on general factors that can be examined without relying on subsequent developments. Those factors include the types of claims covered by the agreement, the amount of discovery allowed, the degree to which that amount may differ from the amount available in conventional litigation, any asymmetries between the parties with regard to discovery, and the arbitrator's authority to order additional discovery." (*Ramirez I, supra,* 16 Cal.5th at p. 506.) "Allowing the arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be unfairly hampered in pursuing a statutory claim based on circumstances that arise postformation. We note that giving the arbitrator authority to expand discovery based on *Armendariz*'s requirement is one way the adequacy concern can be addressed. We do not foreclose other formulations that ensure adequate discovery to vindicate a specific claim." (*Ibid.*)

Here, the Arbitration Agreement simply gives the arbitrator the authority to compel discovery. It does not place any limits on that discovery, and we presume that "adequate" has some meaning beyond the whims of the arbitrator. Thus, as in *Ramirez I*, "if construed to allow the arbitrator to order additional discovery as needed to allow [adequate discovery for the resolution of the dispute], the discovery provisions would be valid." (*Ramirez*

28

*I, supra,* 16 Cal.5th at p. 507; see also *Armendariz, supra,* 24 Cal.4th at p. 106 ["We further infer that when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim."].)

Thus, on this particular provision, we deviate from the trial courts and, on our own de novo review, find that there is minimal, if any, substantive unconscionability.

## E.  Severance

Having now addressed each of the individual provisions that Perez asserts are substantively unconscionable, we turn to the question of whether the trial courts abused their discretion by failing to sever them so that the remainder of the Arbitration Agreement could be enforced.

If the trial court determines that any portion of an arbitration provision is unconscionable, it has discretion to find the entire provision unenforceable, or to sever or limit any unconscionable terms and enforce the remainder of the contract.  (Civ. Code, § 1670.5, subd. (a); *see also Armendariz, supra*, 24 Cal.4th at pp. 121–122.)  We review the trial court's decision whether to sever unconscionable portions of an arbitration provision for an abuse of that discretion.  (See *Armendariz*, at p. 122.)

A trial court may refuse to enforce an agreement as a whole if it is " 'permeated' by the unconscionability." (*Armendariz, supra*, 24 Cal.4th at p. 122.)  To make that determination, "Courts are to look to the various purposes of the contract.  If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Id*. at p. 124.)  As the court explained further, "multiple defects indicate a systematic effort to impose

29

arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Ibid*.) In addition, "permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Id*. at pp. 124–125.)

Here, as we have explained, we agree with the trial court that several provisions are substantively unconscionable but, unlike the trial courts, we conclude that the discovery provision is not. In addition, we note that the provision on class and representative claim waiver concludes by stating, "If the class and representative action waiver in this Section is held to be illegal or unenforceable and cannot be modified to be enforceable, then any claim(s) alleged or brought on behalf of a class or on a representative basis shall proceed in a court of law rather than by arbitration." Thus, it appears at least that particular provision could be severed, and such claims would then be heard in a court of law, but, on the other hand, that provision does not specifically address public injunctive relief or administrative relief.

Cascade asserts that we could sever the remaining provisions or simply confirm its assertions that the Arbitration Agreement does not limit discovery or Perez's ability to recover attorney fees and costs to the full extent of the law. However, as we have explained, unconscionability is evaluated at the time the contract is made. (Civil Code § 1670.5, subd. (a); *Armendariz, supra,* 24 Cal.4th at p. 114.) Likewise, " '[c]ourts cannot "rewrite agreements and impose terms to which neither party has agreed." ' " (*Ramirez v. Charter Communications, Inc.* (2025) 108 Cal.App.5th 1297, 1303 (*Ramirez II*).)

Even setting aside the discovery provision, we cannot say that the trial courts abused their discretion in determining that the unconscionable provisions indicated "a systematic effort to impose arbitration on an employee

30

not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage."  (See *Ramirez II*, *supra,* 109 Cal.App.5th at p. 1305 [rejecting argument to remand matter to trial court to make severability determination following finding that one of four provisions was not unconscionable].)

## III.   DISPOSITION

The orders are affirmed.  Respondent Perez is awarded costs on appeal.


KELETY, J.


WE CONCUR:


DATO, Acting P. J.


RUBIN, J.